Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIRAL DRM LLC, | CASE NO.: 3:23-cv-06261-JSC |
| Plaintiff, | **THIRD AMENDED COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT, AND REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION** |
| v. | |
| JOSHUA BAKER, | |
| Defendant. | **(INJUNCTIVE RELIEF DEMANDED)** |

VIRAL DRM LLC ("Viral DRM") by and through its undersigned counsel, hereby brings this Second Amended Complaint against Defendant JOSHUA BAKER ("Baker") who operates the YOUTUBE CHANNEL named TOPFIVES, for damages and injunctive relief, and in support thereof states as follows:

**SUMMARY OF THE ACTION**

1.      Viral DRM brings this action for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to reproduce, publicly perform, and distribute Viral DRM's original copyrighted works of authorship; and for removal or alteration of copyright management information in violation of 17 U.S.C. § 1202.

**JURISDICTION AND VENUE**

2.      This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 1202.

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

4. Baker is subject to personal jurisdiction in California and jurisdiction is proper in this district court.

5. Jurisdiction is proper in California because Baker is transacting business within California by using the YouTube platform that Google operates from within California to (a) commit acts of infringement, (b) profit from acts of infringement, (c) commit CMI violations, and (d) profit from CMI violations.

6. Jurisdiction is proper in California because Baker committed tortious acts within California on the YouTube platform that Google operates in California. Baker: (a) committed acts of infringement alleged below in California on the YouTube platform, and (b) committed CMI falsification and removal violations alleged below in California on the YouTube platform.

7. Jurisdiction is proper in California because Baker caused Viral DRM to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that Baker committed outside the state consisted of: (a) downloading Viral DRM's copyrighted videos, (b) copying Viral DRM's copyrighted videos, (c) editing and creating derivative works of Viral DRM's copyrighted videos, and (d) removing and falsifying Viral DRM's copyright management information. All these acts caused Viral DRM to suffer tortious injury in California because after committing these acts, Baker then uploaded the infringing videos to YouTube and displayed/performed the infringing videos on the YouTube platform with CMI removed. Following the commission of these tortious acts, Baker then profited from its acts by receiving advertising revenue from infringing videos, and damaged Viral DRM by depriving Viral DRM of the revenue that rightfully belonged to Viral DRM and not Defendant.

8. Jurisdiction is also proper in this district court pursuant to 17 U.S.C. § 512(g)(3)(D) because Baker consented to the jurisdiction of this federal district court when it provided the counternotification attached hereto in **Exhibit 4**, because the service provider provided with the counternotification can be found in this judicial district, namely YouTube.

9. Baker has sufficient minimum contacts with the state of California, there is a direct connection between Baker's tortious acts and the state of California, and the exercise of personal jurisdiction over Baker complies with the Due Process Clause of the United States Constitution.

10. Baker is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Baker is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, Baker engaged in infringement in this district, Baker is subject to personal jurisdiction in this district, and because Baker consented to this venue when Baker provided the counternotification(s) referred to herein because the service provider provided with the counternotification(s) can be found in this judicial district.

12. Baker may be served by and through the email address listed in his counternotice and through YOUTUBE that acted as its agent and Baker agreed to accept service of process through YOUTUBE from Viral DRM or an agent of Viral DRM in the counternotification pursuant to 17 U.S.C. § 512(g)(3)(D).

## VIRAL DRM

13. Viral DRM is a Mississippi limited liability company.

14. Viral DRM is a syndicator of award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. Viral DRM's videographers and photographers cover weather extremes from tornadoes, hurricanes, flooding, blizzards, volcanoes and climate change impacts.

15. Viral DRM is affiliated with WXchasing LLC, a Mississippi limited liability company, and Live Storms Media LLC, an Alabama limited liability company. WXchasing is a video production company that creates some of the videographic Works that Viral DRM syndicates and licenses. Live Storms Media is a licensing broker of video content owned by or exclusively licensed to Viral DRM and WXchasing.

16. Viral DRM's videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. Viral DRM is a popular and frequent source of footage of weather events that cannot be obtained elsewhere. This makes Viral DRM a frequent target for infringers and pirates.

17. Both Live Storms Media and WXchasing operate popular and valuable YouTube channels on the YouTube platform. As of the filing of this Complaint:

   a. Live Storms Media had over 350,000 subscribers and 19,000 videos on its YouTube channel; the most popular Live Storms Media video had over 9 million views; and

   b. WXchasing had over 65,000 subscribers and 475 videos on its YouTube channel; the most popular WXchasing video had over 6.5 million views.

18. The Live Storms Media YouTube channel and the WXchasing YouTube channel are viewed by substantial numbers of California residents who also view advertising placed on the videos on those channels by YouTube.

19. When infringement occurs to Viral DRM's copyrighted Works, Viral DRM is injured and damaged in California. When someone infringes on Viral DRM's copyright like Baker, Viral DRM loses out on potential sales or licensing revenue to other California businesses. When Viral DRM's copyrighted work is infringed upon and widely distributed on YouTube without Viral DRM's permission like Baker did, it damages Viral DRM's reputation as a professional source of valuable extreme weather video content and makes it more difficult for Viral DRM to negotiate valuable licenses from clients and potential clients in California in the future.

## YOUTUBE AND GOOGLE LLC

20. YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

21. Google LLC owns YouTube.

22. YouTube is headquartered in this judicial district.

23. YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics,

4

interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

24. YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

    a. The large number of users: YouTube has over 2 billion active users worldwide.

    b. The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.

    c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.

    d. The ease of use: YouTube is easy to use and navigate.

    e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

## DEFENDANT

25. Upon information and belief, JOSHUA BAKER operates the YOUTUBE CHANNEL named TOPFIVES.

26. Baker copied and downloaded Viral DRM's copyrighted Works from YouTube.

27. After Baker downloaded Viral DRM's Works, he edited the Works, removed Viral DRM's copyright management information, and then uploaded infringing versions of Viral DRM's Works to YouTube.

28. Baker copied Viral DRM's Works in order to advertise, market and promote his YouTube channel, grow their YouTube channel subscriber base, earn money from advertising to their YouTube subscribers, and engage in other money-making business activities using Viral DRM's copyrighted media content.

29. Baker committed the violations alleged in connection with Baker's businesses for purposes of advertising to the public, including YouTube viewers in California, in the course and scope of Baker's business.

30. The YouTube and Google AdSense terms of service prohibit Baker from engaging in the actions alleged herein. Specifically, Baker agreed (1) they are not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) they are responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

31. Attached hereto as **Exhibit 1** is a list showing Baker's links to his channel, the number of subscribers, the number of videos, and the number of views for Baker's most popular videos, and the Viral DRM Works that are the subject of this action.

32. Baker's YouTube channel is extremely popular and valuable.

33. Baker's YouTube channel earns significant revenue from the performance and display of pirated video content.

34. Baker monetized the videos he stole from Viral DRM. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

    a. Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

    b. Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP). This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

    c. Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during

longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

     d.     Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

     e.     AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

     f.     Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this threshold, you become eligible for payment. YouTube offers various payment methods, such as direct deposit or wire transfer, depending on your country.

     g.     Other Revenue Streams: While ad revenue is a significant way to monetize your YouTube channel, creators often explore other revenue streams as well. These can include brand partnerships, sponsorships, merchandise sales, crowdfunding, and more.

35.     Baker had access to and downloaded Viral DRM's copyrighted Works hosted by YouTube from Viral DRM's affiliated Live Storms Media YouTube channels or Facebook pages online.

36.     Once downloaded, Baker edited the pirated videos to remove or crop out Viral DRM's proprietary watermarks and metadata. After editing the pirated videos, Baker combined Viral DRM's videos with other video content that he either stole from others or created himself and then reupload the resulting video to his YouTube channels and enabled advertising on them to earn monetization revenue.

7

## THE COPYRIGHTED WORKS AT ISSUE

37. The authors of the Works at issue are listed in **Exhibit 1,** along with the URLs where the Works can be found online.

38. At all relevant times, Viral DRM was the exclusive licensee of the Works at issue in this case.

39. Viral DRM registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). Copies of the Registration Certificates are attached hereto as **Exhibit 3**.

## INFRINGEMENT BY BAKER

40. Baker has never been licensed to use the Works at issue in this action for any purpose.

41. On a date after the Works listed in **Exhibit 1** at issue in this action were created, but prior to the filing of this action, Baker copied the Works and removed Viral DRM's copyright management information from the Works.

42. Baker copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without Viral DRM's or the authors' permission, and without Viral DRM's copyright management information.

43. Prior to the filing of this action, on a date after the Works were registered, Viral DRM discovered the unauthorized use of the Works by Baker.

## COUNT I - COPYRIGHT INFRINGEMENT

44. Viral DRM incorporates the allegations of paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Viral DRM owns valid copyrights in the Works at issue listed on **Exhibit 1.**

46. Viral DRM registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), as shown in **Exhibit 3**.

47. Baker copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without Viral DRM's authorization in violation of 17 U.S.C. § 501.

48. Baker profited from the monetization of Viral DRM's copyrighted content by placing advertising on the Viral DRM's Works and those profits rightfully belong to Viral DRM.

49. Baker's acts were willful.

50. Viral DRM has been damaged.

51. The harm caused to Viral DRM is irreparable.

## COUNT II - REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

52. Viral DRM incorporates the allegations of paragraphs 1 through 43 of this Complaint as if fully set forth herein.

53. The Works at issue in this case set forth on **Exhibit 1** contain copyright management information ("CMI") consisting of watermarks identifying the Works as "NOT FOR BROADCAST" and the property of LIVE STORMS MEDIA or similar markings that Viral DRM uses to identify and associate itself with its Works. Attached hereto as **Exhibit 2** are screenshots of the alleged infringements.

54. Baker knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the Works at issue in this action in violation of 17 U.S.C. § 1202(b).

55. Baker committed these acts knowing or having reasonable grounds to know that he will induce, enable, facilitate or conceal infringement of Viral DRM's rights in the Works at issue in this action protected under the Copyright Act.

56. Baker caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that he will induce, enable, facilitate or conceal infringement of Viral DRM's rights in the Works at issue in this action protected under the Copyright Act.

57. Viral DRM has been damaged.

58. The harm caused to Viral DRM has been irreparable.

WHEREFORE, Viral DRM prays for judgment against Baker that:

    a. Baker, his officers, agents, servants, employees, affiliated entities, and all of those in active concert with him, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

    b. Baker be required to pay Viral DRM's actual damages and Baker's profits attributable to the infringement, or, at Viral DRM's election, statutory damages, as provided in 17 U.S.C. §§ 504, and 1203;

   c. Viral DRM be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

   d. Viral DRM be awarded pre- and post-judgment interest; and

   e. Viral DRM be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Viral DRM hereby demands a trial by jury of all issues so triable.

DATED: October 9, 2024     Respectfully submitted,

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Viral DRM LLC*